291 A.2d 508 (1972)
Paul STUCKI et al.
v.
Martin S. PLAVIN et al. (Waterville Board of Zoning Appeals).
Supreme Judicial Court of Maine.
June 7, 1972.
Richard B. Sanborn, Augusta, for plaintiffs.
*509 Edward Stern, Bangor, for defendants.
Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY, WERNICK, and ARCHIBALD, JJ.
POMEROY, Justice.
This appeal from a decision of the Superior Court overruling an appeal from the Zoning Board of the City of Waterville purports to have been commenced by proceedings consistent with Rule 80(b) of the Maine Rules of Civil Procedure.
We note there was an order of notice. 30 M.R.S.A. § 4954, sub. 2, par. B. That this order of notice was unnecessary is a conclusion reached by this Court in Your Homes, Inc. v. City of Portland Board of Zoning Appeals, Me., 285 A.2d 372 (1972). See also 30 M.R.S.A. § 2411, sub. 3, par. F.
"Sterns Real Estate" applied for and received a permit from the Board of Zoning Appeals to construct a mall type shopping center.
The appellants are citizens who oppose the granting of the permit. Their appeal to the Superior Court seasonably followed the granting of the permit. The Superior Court sustained the action of the Board of Zoning Appeals in granting the permit.
This appeal followed.
We sustain the appeal.
The record indicates that the land on which Sterns proposed to build the shopping mall was located in two different zones. Ownership of record of the entire parcel of land was in the applicant.[1] Sec. III B 3 of the zoning ordinance of the City of Waterville purported then to control the issuance or withholding of the permit.
This section reads as follows:
"Division of Lot by Zone Boundary: Where a zoning district boundary line divides a lot or parcel of land of the same ownership of record, at the time such line is adopted, the regulations applicable to the less restrictive portion of such lot or parcel may apply to the whole lot or parcel provided, however, that such extension of use into the more restricted portion shall meet the approval of the Board of Zoning Appeals."
The appellants attack this section of the ordinance as unconstitutional because, as they say:
"The ordinance sets no standard for the Board to use in changing the use from one zone to another."
Recently there has been considerable interest in the constitutional requirements for the enactment of a valid zoning ordinance evidenced both by litigation in the courts and by legal writers.
See for example: Phillips Petroleum Co. v. Zoning Board of Appeals, Me., 260 A.2d 434 (1970). See also Administration of Zoning in MaineGregory, 20 Maine Law Rev. 207. Suggested Revision in Maine's Planning and Land Use Control Enabling Legislation, 20 Maine Law Rev. 175. Suggested Revision in Maine's Planning and Land Use Control Legislation, 1969, 21 Maine Law Rev. 151.
The authority of a city or town in Maine to enact a zoning ordinance stems from the grant of such authority by 30 M. R.S.A. § 4953 and since the 1971 amendment, by 30 M.R.S.A. § 4961 et seq.
The effect of these statutes is to delegate to cities and towns, under the conditions there prescribed, legislative power to enact land use control regulations, employing zoning ordinances for the purpose.
*510 Administration of the ordinance is contemplated to be committed to a Board of Appeals. (30 M.R.S.A. § 4963). Since it is axiomatic no legislative body may delegate legislative powers to administrative officers, it necessarily follows, the powers of the Board of Appeals must be delimited by the standards provided by the legislative body. Waterville Hotel Corp. v. Board of Zoning Appeals, Me., 241 A.2d 50, 53.
Most of the litigation attacking zoning ordinances is based on a claimed insufficiency of the purported standards. For collection of cases see: 58 A.L.R.2d 1079.
The governing rule, constitutionally mandated, may be simply stated as that in delegating power to an administrative agency, the legislative body must spell out its policies in sufficient detail to furnish a guide which will enable those to whom the law is to be applied to reasonably determine their rights thereunder, and so that the determination of those rights will not be left to the purely arbitrary discretion of the administrator.
In Waterville Hotel Corp. v. Board of Zoning Appeals, supra, we said of a section of the Waterville Zoning Ordinance (sec. VII D 2) which required the Board to exercise its power "in harmony with the comprehensive plan for municipal development and the purpose and intent of this ordinance, in accordance with the public interest, and in support and furtherance of the health, safety and general welfare of the residents of the municipality," the standards are insufficient to meet the constitutional requirement of standards.
We also in the same case declared that the language of Sec. VII 7 A, "The regulations of this ordinance shall be held to be the minimum requirement for the promotion of the health, safety and general welfare * * *," was likewise insufficient.
In Phillips Petroleum Co. v. Zoning Board of Appeals, supra, we assumed, but did not decide that the words, "permit any building and/or use detrimental or injurious to the neighborhood," met constitutional requirements.
In Sundeen v. Rogers, 83 N.H. 253, 141 A. 142, the phrase "literal enforcement would result in unnecessary hardship" was held to be a plain and specific standard which left nothing to the mental processes of the Board save the findings of the necessary facts and thus met the constitutional requirement of adequate standards.
These examples and others which may be found in 58 A.L.R.2d 1083 et seq., illustrate the difficulty in determining when standards are sufficient and when they are not.
In the case before us the drafters of the ordinance were concerned with the problem of what to do with so-called "split lots."
Many courts have been critical of zone boundary lines drawn without regard for existing property lines and established uses of land.[2] Doubtless being conscious that this (split lot problem) is an area of vulnerability to attack on the validity of zoning ordinances, at least in their application to a particular case, the legislative body attempted to solve the potential problem by the enactment of Sec. III B 3.
Similar provisions which had as their purpose the re-zoning of a small parcel split by a zone line to place the land in a single zone withstood attack as "spot zoning" in Rochester v. Barcomb, 103 N.H. 247, 169 A.2d 281 (1961). In that case the Court relied heavily on a presumption,[3] favoring the validity of a municipal ordinance and declared that "it was not necessarily arbitrary or unreasonable for the *511 city to preserve the area here involved as residential."[4]
In Portland the split lot problem has been solved by the provision that the less restricted portion of the lot shall extend "not more than thirty feet into the more restricted portion, provided * * *." Forest City, Inc. v. Payson, Me., 239 A.2d 167 (1968).
This is not an uncommon technique. See: Anderson, American Law of Zoning, section 8:12.
The framers of the ordinance now before us treated the problem by attempting to make provision for a special exception permit. However, the language employed bespeaks as much the language of a variance, as of a special exception.
A special exception use differs from a variance in that a variance is authority extended to a landowner to use his property in a manner prohibited by the ordinance (absent such variance) while a special exception allows him to put his property to a use which the ordinance expressly permits. Fox v. Zoning Board of Appeals, 146 Conn. 70, 147 A.2d 472 (1958).
The distinction between a variance, which depends on a finding of the existence of all conditions enumerated in section VII D 2b of the ordinance and an exception is that an exception requires no such finding, but only that the conditions stated in the ordinance have been met, i. e., (1) that the boundary line divides a lot or parcel of the same ownership of record, and (2) that the ownership was the same at the time such line was adopted.
There should be no discretion in the Board of Appeals as to whether or not to grant the permit if the conditions stated in the ordinance exist. That determination should be made by the legislators. The Board's sole function should be to determine whether or not the conditions which the City Council has provided as conditions precedent to the issuance of the exception exist.
The legislative body which enacted this ordinance made provision that when a zoning district boundary line divides a parcel of land of the same ownership of record, at the time such line is adopted the regulations applicable to the less restrictive portion of the lot may apply to the whole lot.
The problem arises because they continued by saying "provided such extension of use into the more restrictive portion shall meet the approval of the Board of Zoning Appeals."
At this point the Board of Zoning Appeals faced with the problem is wont to ask: "Under what set of facts do we grant or withhold approval?"
The applicant for approval necessarily inquires: "What facts must I present to gain the Board's approval?"
If there is no language in the ordinance, which, by reasonable interpretation answers these questions, the section under investigation is void on its face.
By using the word "may" and by including the phrase "provided, however, that such extension of use into the more restrictive portions shall meet the approval of the Board of Zoning Appeals," it becomes apparent the legislative body undertook to give discretionary powers to the Board of Appeals without prescribing any standards whatsoever on the basis of which such discretion was to be exercised.
This, as we pointed out in Waterville Hotel Corp. v. Board of Zoning Appeals, supra, is not constitutionally permissible.
For a variance to have been authorized, the conditions described in VII D 2b would have to have been satisfied. No such compliance with this section is shown in the record before us. The Board of Zoning *512 Appeals in granting the permit acted under a section of the ordinance which was unconstitutional on its face.
Although many other objections to the granting of the permit were noted and argued before us, it becomes unnecessary to discuss them in view of the disposition we make.
The entry must be,
Appeal sustained.
All Justices concurring.
NOTES
[1] Actually the ownership was in Fred J. Sterns, Herbert Sterns and the heirs of George H. Sterns. The application was filed on behalf of Sterns Real Estate. One of the appellant's Points of Appeal is directed to this fact.
[2] For collection of cases see: 159 A.L.R. 854.
[3] Our Court has never determined that such presumption exists with respect to a municipal ordinance.
[4] See also: Waterstradt v. Board of Commissioners, 203 Kan. 317, 454 P.2d 445 (1969).