STATE of Maine

v.

**Russell BOYNTON.**

Supreme Judicial Court of Maine.

Nov. 18, 1977.

Michael E. Povich, Dist. Atty., James E. Patterson, Asst. Dist. Atty., Ellsworth, for plaintiff.

Libhart, Ferris & Dearborn, by Wayne P. Libhart, N. Laurence Willey, Jr., Ellsworth, for defendant.

Before POMEROY, WERNICK, ARCHIBALD, DELAHANTY, GODFREY and NICHOLS, JJ.

NICHOLS, Justice.

Pursuant to the provisions of 12 M.R.S.A. § 4252[1], and prior to the date of the alleged violation, the Hancock County town of Lamoine duly adopted ordinances regulating the digging of shellfish in that town. One ordinance (here invoked) provided for resident shellfish digging licenses, both com-

---

1. This enabling statute provides in pertinent part:

"Any municipality, which has raised or appropriated money within 2 years next prior to acting under this section for a shellfish conservation program approved by the commissioner as authorized under section 4251, may enact a municipal ordinance fixing the time when clams, quahogs and mussels may be taken from any or all of the coastal waters and flats within the municipality, except for those areas closed by regulation of the commissioner under section 3503 or section 3504. The ordinance must have the written approval of the commissioner before adoption and that approval must be filed with the municipal clerk prior to adoption. The ordinance may provide limitations on the amount of clams, quahogs and mussels which may be taken within the municipality, and may provide that municipal licenses be required for the taking of any such species within the municipality, and may determine the qualifications for the license, including residence requirements, and may fix the license fees. . . ."

mercial and non-commercial.[2] Another ordinance provided for similar non-resident shellfish digging licenses.

The Defendant, a Lamoine resident, was charged in District Court with violating the ordinance regulating resident diggers by digging clams in Lamoine on July 22, 1976, without the license required of him by that ordinance.

The case was transferred to Superior Court and was tried jury-waived. There, by appropriate motions, the Defendant unsuccessfully challenged the enabling statute as an illegal delegation of legislative power.

After being adjudged guilty as charged, the Defendant appealed to this Court.

The parties have stipulated that all steps required of a town to adopt an ordinance of this type had been taken in this case. Upon appeal, the Defendant renews his attack upon the enabling statute as illegally delegating legislative power in violation of the state and federal constitutions.

We deny the appeal.

■ The purpose of the non-delegation doctrine, upon which the Defendant here relies, is to protect the citizen against arbitrary or discriminatory action by public officials. In practice, however, the doctrine has not prevented the delegation of legislative power. Rather, the goal has been to make certain that delegated powers were guided by meaningful standards. Now Professor Davis observes that the focus should no longer be exclusively upon standards but on the totality of protections against arbitrariness, including both safeguards and standards. K. Davis, *Administrative Law Treatise* § 2.00 (1970 Suppl.).[3]

■ Our Court has recognized that the line of demarcation between a legitimate and an illegitimate delegation of legislative power is often quite dim. *Small v. Maine Board of Registration and Examination in Optometry*, Me., 293 A.2d 786, 788 (1972). As a general rule, the legislative authority must declare the policy or purpose of the law and set up standards or guides to indicate the extent, and prescribe the limits, of the discretion it is delegating. *Id.*

■ There are areas of necessary legislative undertakings, however, where it may not be feasible to supply precise standards without frustrating the purposes of the particular legislation. In such situations the presence of adequate procedural safeguards to protect against an abuse of discretion by those to whom the power is delegated compensates substantially for the want of precise guidelines and may be properly considered in resolving the constitutionality of the delegation of power. *Finks v. Maine State Highway Commission*, Me., 328 A.2d 791, 796 (1974).

■ The statutes here challenged withstand the constitutional attack.

As for standards, 12 M.R.S.A. §§ 4251–4252 are patently conservation measures. The Legislature has defined conservation for the purposes of this chapter:

" 'Conservation' means providing for the development and wise utilization of Maine's marine resources or protecting

---

**2.** The town ordinance provides, *inter alia*:

"*Section 1.* Municipal shellfish license required. It is unlawful for any person to dig or take shellfish from the shores, flats or coastal waters of this municipality without having a current license issued by the clerk of this municipality as provided in this ordinance. . .

"*II. License designation, scope: licensee must sign.* A. Resident commercial license. The license, designated as a Resident Commercial Municipal Shellfish License for the Town of Lamoine, entitles the holder to dig and take any amount of shellfish from the shores, flats and waters of this municipality when and where it is otherwise lawful to do so.

"*B. Resident non-commercial license.* The license, designated as a Resident Non-Commercial Municipal Shellfish License for the Town of Lamoine, entitles the holder to dig and take, for the use of himself or his family, not more than one peck of shellfish in any one day from the shores, flats and waters of this municipality when and where it is otherwise lawful to do so . . . ."

**3.** See generally F. Cooper, *State Administrative Law* 46 (1965); Note, "Safeguards, Standards and Necessity: Permissible Parameters for Legislative Delegations in Iowa," 58 Iowa L.Rev. 974 (1973).

the ultimate supply for present and future generations or preventing waste or for implementing sound management programs." 12 M.R.S.A. § 3401(5–A). Therein lies a standard to limit the latitude of those who draft municipal ordinances and that official who must approve them before adoption.

As for safeguards, there can be no municipal ordinance for regulation and licensing in this area unless the municipality has first funded a shellfish conservation program approved by the Commissioner of Marine Resources. 12 M.R.S.A. § 4252. Next, the proposed ordinance must have the approval of the Commissioner prior to enactment. Finally, the municipality's legislative body must vote to enact the ordinance. *Id.* This bifurcation of authority between state and local levels of government is further protection against uncontrolled discretionary power.

We find no constitutional infirmity in the statutes under which there was delegated legislative authority to regulate the digging of clams and the licensing of clamdiggers in the town of Lamoine.[4]

The entry must be:

Appeal denied.

Judgment affirmed.

POMEROY, WERNICK, ARCHIBALD, DELAHANTY, GODFREY and NICHOLS, JJ., concur.

---

4. We do not reach, and presently suggest no opinion on, any question relating to the Lamoine ordinance other than that raised by this issue of the delegation of legislative power.