## NORTHEAST OCCUPATIONAL EXCHANGE, INC.

v.

## STATE of Maine.

Supreme Judicial Court of Maine.

Argued March 18, 1988.

Decided May 2, 1988.

Joel A. Dearborn, Laurie Anne Miller (orally), Ferris, Dearborn & Willey, Brewer, for plaintiff.

Francis E. Ackerman (orally), E. Ann Catlin, Asst. Attys. Gen., Augusta, for defendant.

Before McKUSICK, C.J., and NICHOLS, WATHEN, GLASSMAN, SCOLNIK and CLIFFORD, JJ.

McKUSICK, Chief Justice.

In this M.R.Civ.P. 80C action, plaintiff Northeast Occupational Exchange, Inc., appeals from a Superior Court (Penobscot County) judgment affirming the Commissioner of Mental Health and Mental Retardation's denial of Northeast's reapplication for a license as a community mental health services facility under the Community Mental Health Services Act, 34–B M.R.S.A. §§ 3601–3606 (1988). We reject both of Northeast's contentions on appeal; namely,

1) that the Act in delegating authority to the Commissioner to license community mental health facilities and to issue regulations governing that licensing lacks constitutionally adequate standards, and 2) that the regulations issued by the Commissioner pursuant to the Act are themselves unconstitutionally vague.

Until September 8, 1982, Northeast was fully licensed as a community mental health services facility pursuant to 34–B M.R.S.A. § 3606. When its license expired on that date, the Commissioner issued Northeast a conditional license pursuant to 34–B M.R.S.A. § 3606(2) pending Northeast's successful completion of the licensing process. On June 1, 1984, the Commissioner denied Northeast's reapplication for a full license. After an unsuccessful administrative appeal of that denial, the procedural details of which are not here relevant, Northeast sought judicial review of the Commissioner's final decision pursuant to M.R.Civ.P. 80C. On October 16, 1987, the Superior Court affirmed the Commissioner's decision and Northeast appeals that order to this court.

## I.

Northeast's principal contention is that the Community Mental Health Services Act improperly delegates discretionary licensing and rulemaking authority to the Commissioner in violation of the strict separation of powers between the legislative and executive branches of government mandated by article III, section 2 of the Maine Constitution. To evaluate the constitutionality of a legislative delegation of authority to an administrative agency, we review the legislation in context to see whether the legislation contains

"sufficient standards—specific or generalized, explicit or implicit [—]" to guide the agency in its exercise of authority, so that (1) regulation can proceed in accordance with basic policy determinations made by those who represent the electorate and (2) some safeguard is provided to

assist in preventing arbitrariness in the exercise of power.

*Maine School Administrative Dist. No. 15 v. Raynolds,* 413 A.2d 523, 529 (Me.1980) (quoting *City of Biddeford v. Biddeford Teachers Ass'n,* 304 A.2d 387, 400 (Me. 1973)) (citation omitted). The legislature has provided an administrative agency with adequate standards to guide its decisionmaking when "the legislation clearly reveals the purpose to be served by the regulations, explicitly defines what can be regulated for that purpose, and suggests the appropriate degree of regulation." *Lewis v. State Dept. of Human Services,* 433 A.2d 743, 748 (Me.1981). The Act here at issue amply meets the *Lewis* threefold test.

◼ 34–B M.R.S.A. §§ 3603, 3604, 3606, authorize the Commissioner to provide, fund, and license community mental health services, and to promulgate rules relating thereto. To guide the Commissioner in those functions, section 3602 declares:

The purpose of [the Community Mental Health Services Act] is to expand community mental health services, encourage participation in a program of community mental health services by persons in local communities, obtain better understanding of the need for those services and secure aid for programs of community mental health services by state aid and local financial support.

It is thus clear from section 3602 that the purpose of the Act is to encourage an increased availability of and participation in local community mental health services as well as to secure financial support for such programs. Furthermore, because of the overall statutory mandate making the Bureau of Mental Health [1] "responsible for the ... promotion and guidance of mental health programs within the several communities of the State," 34–B M.R.S.A. § 3001 (1988), implicit in the general language of section 3602 is a charge that the Commissioner exercise that authority in a way to advance local mental health care of good quality. The implicit standard of good quality care is further reinforced by the

---

1. The Bureau of Mental Health is a bureau of the Department of Mental Health and Mental Retardation headed by the Commissioner. 34–B M.R.S.A. § 3001.

provision in section 3604(3) requiring that local mental health programs receiving grants from the Commissioner "provide for *adequate* standards of professional services in accordance with state statutes." (Emphasis added)

In addition to setting out clearly the purpose the licensing process must serve, the Act also "explicitly defines what can be regulated for that purpose." *Lewis,* 433 A.2d at 748. The Act permits issuance of "[l]icenses to operate . . . a facility for the provision of mental health services," which term is carefully defined as "out-patient counseling, other psychological, psychiatric, diagnostic or therapeutic services and other allied services." 34–B M.R.S.A. §§ 3606, 3601(2). In addition, the Commissioner's rulemaking authority under section 3603 is limited by the implicit requirement that all regulations effectuate the express statutory purpose of expanding the availability and quality of community mental health services and encouraging participation in local communities.

Finally, section 3603 requires that rules promulgated to implement the Act must be adopted pursuant to the Administrative Procedures Act, 5 M.R.S.A. §§ 8001–11116 (1979 & Pamph.1987). Regulations promulgated pursuant to section 3603 are subject to judicial review (*id.* § 8058), modification on petition of any affected person (*id.* § 8055), and public notice prior to adoption (*id.* § 8053). These "procedural safeguards to protect against an abuse of discretion by [the Commissioner in exercising his rulemaking authority under the Act] compensate[ ] substantially for the want of precise guidelines [in the Act itself] and may be properly considered in resolving the constitutionality of the [legislative] delegation of power." *Lewis,* 433 A.2d at 749 (quoting *State v. Boynton,* 379 A.2d 994, 995 (Me.1977)). *See also* 1 K. Davis, *Administrative Law Treatise* § 3:14, at 205–06 (1978).

Because of the statutory standards and procedural safeguards surrounding the Commissioner's licensing and rulemaking authority, we reject Northeast's contention that the Act unconstitutionally delegated legislative authority to the Commissioner.

## II.

Northeast also contends that the Department's regulations for the licensing of local mental health facilities are themselves unconstitutionally vague. A rule or regulation is unconstitutionally vague only if its meaning is so ambiguous or unclear that an "ordinary person exercising ordinary common sense" must guess at its meaning. *United States Civil Serv. Comm'n v. National Ass'n of Letter Carriers,* 413 U.S. 548, 579, 93 S.Ct. 2880, 2897, 37 L.Ed.2d 796 (1973).

> The degree of vagueness that the Constitution tolerates—as well as the relative importance of fair notice and fair enforcement—depends in part on the nature of the enactment. Thus, economic regulation is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action. Indeed, the regulated enterprise may have the ability to clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process.

*Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 498, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982) (footnotes omitted). Regulations are sufficiently specific if the affected person can understand what the regulations require, even though some doubt may arise when marginal cases are considered. *United States Civil Serv. Comm'n v. National Ass'n of Letter Carriers,* 413 U.S. at 579, 93 S.Ct. at 2897.

■ The regulations applicable to Northeast are clearly specific enough to allow an applicant for a license as a community mental health facility to determine what must be included in its application. Northeast complains that section 400.01(A) of these regulations requiring applicants to provide "written documentation as minimum evidence of compliance with these regula-

tions" fails adequately to delineate what other evidence might be required to obtain a license. We find no ambiguity in this provision, which provides simply that an applicant cannot obtain a license if he has not at the least provided documentation to the Department showing compliance with the rules regulating mental health facilities.[2] Northeast also objects to the requirement in section 400.03(B) that "[t]he organizational framework of the agency must be *adequate* to facilitate its objectives." (Emphasis added) The regulations elucidate what constitutes an "adequate" organizational framework, however, by requiring "clear lines of authority" within the organization and delineation of an "area of responsibility for each organizational element and the allocation of staff to each element." Finally, Northeast objects to the requirement in section 400.03(E) of the regulations that applicants "demonstrate the financial capability to provide the programs called for in its goals." The provision is not vague, however, since section 400.03(E) goes on to require an applicant to present a financial audit, a budget displaying sources and allocations of financial resources, and a fee schedule. Such documentation would inform the Department whether the applicant had the financial resources to carry out its functions as a community health facility.

"[T]here are limitations in the English language with respect to being both specific and manageably brief." *United States Civil Serv. Comm'n v. National Ass'n of Letter Carriers,* 413 U.S. at 578–79, 93 S.Ct. at 2897. The regulations here under review strike an appropriate balance. We can find no unconstitutional vagueness in the Commissioner's regulations for the licensing of community mental health facilities.

The entry is:

Judgment affirmed.

All concurring.

---

**2.** The regulations define "documentation" as including among other things, "manuals, policy and procedure statements, records, exhibits, and minutes of meetings."