STATE OF MAINE
HANCOCK, ss:

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-07-004

ANTHONY ULIANO, and
ERIN ULIANO,

      Petitioners,

      v.

**DECISION AND ORDER**

MAINE BOARD OF
ENVIRONMENTAL PROTECTION,

      Respondent.


## Background

In March of 2007, Petitioners filed an appeal of final agency action pursuant to M.R. Civ. P. 80C, which is currently before the Court.

This matter began in 2001 when Petitioners filed an application with the Department of Environmental Protection seeking approval to construct a 95-foot long and 6-foot wide dock, together with supporting piers, a ramp, and a float. Following a hearing and the submission of information, the Department approved the application on August 6, 2001, having made appropriate findings. On January 3, 2002, the matter having been appealed to the Board of Environmental Protection, a hearing was held and evidence was received. On February 21, 2002, the Board voted to reverse the Department's approval.

The Petitioners appealed the decision of the Board to the Superior Court, which affirmed the denial of the permit following a thorough analysis. *See Uliano v. Me. Bd. of Envtl. Prot.*, ELLSC-AP-2002-00007 (Me. Super. Ct., Han. Cty., Feb. 18, 2003) (Mead, J.). On further appeal to the Law Court, the judgment of the Superior Court was vacated and the matter was remanded to the Board. *Uliano v. Me. Bd. of Envtl. Prot.*, 2005 ME 88, ¶25, 876 A.2d 16, 22.

In 2007, the Board again issued a decision denying the application, which decision is the subject of this appeal.

1

Needless to say, this matter has been thoroughly and thoughtfully litigated to this point.[*]

Although the Superior Court acts as an intermediate appellate court with regard to this 80C appeal, and on appeal the Law Court will look directly at the Board's decision, it is hopefully helpful to review the most recent decision in the context of issues raised on appeal by the Petitioner. *Uliano*, 2005 ME 88, ¶ 6, 87 A.2d at 18

## Standard of Review

As noted by the parties, on review by the Superior Court, it may affirm, reverse, or remand the administrative decision for further proceedings. 5 M.R.S. § 11007(4) (2008). The statute sets forth specific conditions and situations where reversal or modification is appropriate. 5 M.R.S. § 11007(4)(C) (2008).

## Discussion

Petitioner argues several points.

1. That the Board's conclusion that a practicable alternative exists is not supported by substantial evidence on the record;
2. That the Board failed to apply the practicable alternatives standard to its Section 480-D(1) analysis;
3. That the Board abused its discretion and acted arbitrarily and capriciously in construing Section 480-D(1) as applying to a specific geographic area;
4. That the Board lacked substantial evidence to support its finding that the proposed pier would adversely affect existing scenic and aesthetic uses;
5. That the Board erred in applying chapter 310 § 5(D) to its analysis of whether the project would unreasonably interfere with scenic and aesthetic uses;
6. That the scenic and aesthetic uses standard in the Natural Resources Protection Act is unconstitutionally vague;
7. That the Board's decision denies Petitioner the common law right to wharf-out to the navigable portion of the water.

As a starting point, one needs to review the Board's decision on remand, dated February 7, 2007. (Record 133). It is clear that the Board's 'findings' are done in a

---

[*] Subsequently in 2007, a Motion to Intervene was filed and granted.

2

narrative format that does not make for meaningful appellate review in accordance with the direction of the Law Court in its 2005 review of this matter. *See Uliano,* 2005 ME 88, ¶¶ 23-23, 876 A.2d at 21-22. While the qualifications for Board membership do not require a law degree, clearly there is staff to provide that needed assistance. Here, that assistance was lacking to create organized findings that would assist in meaningful appellate review.

The Board has elected to frame its conclusions within the confines of the Natural Resource Protection Act ("NRPA") section 480-D known as "Standard". 38 M.R.S. § 480-D (2008). In that context, the Board has concluded that the only "Standard" Petitioner has not complied with was number one, which provides:

> **1. Existing uses.** The activity will not unreasonably interfere with existing scenic, aesthetic, recreational or navigational uses.

38 M.R.S. 480-D(1) (2008). The question the Petitioner raises is whether this conclusion was lawfully reached. To answer this question, the Court needs to explore the points raised by the Petitioner, each in turn.

> *1. That the Board's conclusion that a practicable alternative exists is not supported by substantial evidence on the record*

In the earlier 80-C review, Justice Mead analyzed in the context of judicial precedent the meaning of the phrase 'substantial evidence on the record'. He observed beginning at page 11 of his decision as follows.

> Courts afford an agency's factual findings great deference and will uphold those findings if they are supported by "competent and substantial evidence." *Hopkins v. Department of Human Services,* 2002 ME 129, ¶ 8, 802 A.2d 999. Those seeking to overturn an agency decision must show not only evidence to support their position but the lack of substantial credible evidence in the record to support the agency's decision. *Green v. Commissioner of Department of Mental Health, Mental Retardation and Substance Abuse Services,* 2001 ME 86, ¶ 12, 776 A.2d 612. Inconsistent evidence will not render an agency decision

3

unsupported by substantial evidence. *Seider v. Board of Examiners of Psychologists*, 2000 ME 206, ¶ 9, 762 A.2d 551.

*Uliano*, ELLSC-AP-2002-00007, at 11-12.

Reference to page 8 of the intervenors' pre-filed testimony would, in this Court's view, represent substantial evidence to support the Board's finding regarding practicable alternatives. (Record 105). Similar testimony is found in the testimony of Ms. Opdyke, Mr. Dunton, and Mr. Boyer among others offered at the March 2, 2006, hearing in terms of meeting the substantial evidence of practicable alternative test.

> *2. That the Board failed to apply its practicable alternatives standard to its Section 480-D(1) analysis.*

This is an example of how the Board's drafting style makes it very difficult to evaluate the Board's compliance with the Law Court's directive that the practicable alternatives to the proposed project should be balanced or integrated as 'a factor' as opposed to a dispositive factor in the Section 480-D(1) analysis.

It must be noted that the presence or absence of a "practicable alternative" is a factor found in the Wetland Protection Rules. 2 C.M.R. 06 096 310-4 § 5(A). It is not found in the Standards identified in Section 480-D. As the Law Court noted in *Uliano*, the Wetland Rules were enacted to be sure that the Standards were met. *Uliano*, 2005 ME 8, ¶ 11, 876 A.2d at 19. Adherence to the Rules are one factor to be considered to determine whether the Section 480-D criteria are met. *Id.* ¶ 12, 876 A.2d at 19.

In its decision on remand, the Board has addressed the Wetland Rules at Section 2 of its decision. (Record 133 at 2). In that Section the Board specifically indicated that a part of "assessing whether the impact of the proposed project on the existing scenic and aesthetic uses" involves consideration of the practicable alternatives to the project. (Record 133 at 3). The Court finds that the Board did follow the Law Court's directive to apply the Wetland Rules as factors in evaluating compliance with the Rules to the Section 480-D(1) standards. (Record 133 at 8). While acknowledgment of compliance with the directive from the Law Court might have been organized and phrased

4

differently, the Court is satisfied that the Board has complied with the directive of the Law Court on this point.

>  *3. That the Board abused its discretion and acted arbitrarily and capriciously in construing 480-D(1) as applying to a specific geographic area.*

In determining what is arbitrary and capricious, case law indicates that an agency's action is arbitrary and capricious if it is a "wilful and unreasoning action, without consideration of facts or circumstances." *Help-U-Sell, Inc. v. Me. Real Estate Comm'n*, 611 A.2d 981, 984 (Me. 1992) (quoting *Cent. Me. Power Co. v. Waterville Urban Rental Auth.*, 281 A.2d 233, 242 (Me. 1971)). The record shows that the Board conducted three hearings and a site-visit and also reviewed the record before it and the Department as well as the parties' submissions before rendering a decision. It is clear from the decision on remand that the Board applied the criteria in the NRPA and the Rules, as they expand on the NRPA standards, in order to reach its decision.

Petitioner seems to be arguing that the geographical area which is relevant was inappropriately selected by the agency charged by the Legislature to protect "resources of state significance. 38 M.R.S. § 480-A (2008). In the case cited by Petitioner in its argument on this point, *Kroeger v. Dep't of Envtl. Prot.*, 2005 ME 50, ¶ 16, 870 A2d 566, 571, the Law Court fairly clearly acknowledged a deference to the Board in interpreting and applying its regulations and determining the geographical area to which they will be applied. On the record as a whole, this Court cannot say that the Board acted arbitrarily or capriously in applying the Rules and Statute in this case.

>  *4. That the Board lacked substantial evidence to support its finding that the proposed pier would adversely affect existing scenic and aesthetic uses.*

The Law Court, in its remand, encouraged the Board to provide facts which would permit meaningful appellate review with regard to the conclusion that the project would unreasonably interfere with existing scenic and aesthetic uses. In its decision on remand, the Board expanded its findings beyond its initial decision. (Record 133 at 6-8). It is true, that the format selected by the Board does not easily allow a correlation between the 'findings' and the

record support.  Nonetheless, a reference to the March 2006 hearing transcript alone makes it clear to this Court that the record contains substantial evidence at this point of the impact of this project as affecting existing scenic and aesthetic uses.  (Record 113).

> *5. That the Board erred in applying chapter 310 §*
> *5(D) to its analysis of whether the project would*
> *unreasonably interfere with scenic and aesthetic*
> *uses.*

Petitioner argues that the Board's reference to Chapter 310 § 5(D) of the Wetland Protection Rules was error because it had no bearing on the Ulianos' application.  In our discussion of Petitioner's point two, this Court reflected its understanding of the direction from the Law Court that the Board was to consider the Rules as factors confirming and supporting the application of the Standards found in Section 480-D.  Petitioner seems to misconstrue the function of the Wetland Rules.  They are not *criteria* for granting an application, neither stand-alone criteria nor in conjunction with other Rules.  They are *factors*, as the Law Court has made clear, to be considered in evaluating the compliance of the Petitioner with the Standards found at Section 480-D.  This Court agrees with Petitioner that the Rules are not stand-alone criteria.  The Court finds from the Board's decision on remand that the Board did not treat them as criteria, but as factors to be appropriately considered.  The Court finds that the Board did not err in applying the Wetland Rules as part of the underpinnings for its final decision.

> *6. That the scenic and aesthetic uses standard in*
> *the Natural Resources Protection Act is*
> *unconstitutionally vague.*

As Petitioner notes in his argument, this argument was made previously to the Superior Court in *Uliano v. Me. Bd. of Envtl. Prot.*, ELLSC-AP-2002-00007.  While this issue may still be viable due to the lack of a final decision in the appeal of the Superior Court's last decision, followed by its remand back to the Board, this Court is satisfied that the analysis of this issue was appropriately done by Justice Mead and adopts his reasoning on this issue.  For ease of reference, it is restated below:

> The Petitioners are challenging the
> Constitutionality of the NRPA's "scenic and

6

esthetic use" standard and the Rules "cumulative impact" and "practicable alternative" standards. There is a strong presumption of Constitutionality and the Petitioners bear the burden of proving the legislation unconstitutional. *Town of Baldwin v. Carter*, 2002 ME 52, ¶ 9, 794 A.2d 62. The Court must avoid finding a statute unconstitutional if a reasonable constitutional interpretation is available. The Petitioners are further challenging the standards contained in the Rules claiming they exceed the Board's rule-making authority. There is a presumption of regularity and courts assume an agency acted with full knowledge of the material facts in justification of their action. *Driscoll v. Gheewalla*, 441 A.2d 1023, 1029-30 (Me. 1982).

**Scenic and Aesthetic Uses**

The Petitioners argue that the NRPA's "scenic and aesthetic use" standard is unconstitutionally vague. The Petitioners first allege that the legislature's delegation of authority to the Department is not well defined, specific or clear and therefore constitutes an unlawful delegation of authority. The absence of clear standards and guidelines grants an agency impermissible discretion that allows an agency to engage in legislative type opinion making. *Wakelin v. Town of Yarmouth*, 523 A.2d 575, 577 (Me. 1987). In determining the constitutionality of a legislative delegation of authority, the court reviews the entire relevant legislative scheme to determine if the legislature provided the agency with sufficient standards to guide their decision-making. *Ogunquit Sewer Dist. v. Town of Ogunquit*, 1997 ME 33, ¶ 16, 691 A.2d 654. The legislature accomplishes this goal when they clearly reveal the purpose of the regulations, define what an agency can regulate and suggest degrees of regulation. *Northeast Occupational Exchange Inc. v. State*, 540 A.2d 1115, 1116 (Me. 1998).

The Court in *Kosalka v. Town of Georgetown*, 2000 ME 106, ¶ 17, 752 A.2d 183, found a condition requiring all developments to "conserve natural

beauty" an "unmeasurable quality, totally lacking in cognizable, quantitative standards" that amounted to an unconstitutional delegation of authority. The Court in *Wakelin* struck down an "existing use" ordinance because of the lack of specific standards that limited the town zoning board's discretion.

The cases the Petitioners rely on involved municipalities delegating authority to local town boards. Courts have specifically recognized the substantial difference in delegations like those present in *Kolsaka* and *Wakelin* and delegations from the legislature to state agencies bound by statute. *Lewis v. State Department of Human Services*, 433 A.2d 743, 749 (Me. 1981). The legislature reveals the NRPA's purpose in its "Findings; purpose" section, defines what conduct the Department and the Board may regulate in furtherance of the NRPA's stated purpose, suggests levels of regulation, authorizes the Board to enact rules in furtherance of the NRPA, limits the Board's authority in its authorizing statute, requires the Board to enact rules pursuant to the APA, and provides for judicial review of the Board's decisions. The legislative scheme contains sufficient safeguards to "protect against an abuse of discretion by [the Board] and compensates substantially for the want of precise guidelines [in the NRPA itself] and may be properly considered in resolving the constitutionality of the [legislative] delegation of power. *Northeast Occupational Exchange, Inc. v. State of Maine*, 540 A.2d 1115, 1117 (Me. 1988) (quoting, *Lewis*, 433 A.2d at 749). It is not in the legislature's interest to include precise standards in statutes that deal with technical and scientific matters, and the additional procedural safeguards present in legislative delegations of authority make up for the lack of precise standards. *Hannum v. Maine Board of Environmental Protection*, No. AP-01-3, 2002 Me. Super. LEXIS 205, *9, (November 12, 2002) (citing *Lewis*, 433 A.2d at 748).

Further, viewing the Statute on its face, the "scenic and aesthetic use" standard would not cause an ordinary citizen to guess at its

8

meaning. Concepts of due process require laws provide notice of what conduct the state will sanction. *Town of Baldwin*, 2002 ME at ¶ 10. The Court in *Kolsaka* struck down an ordinance requiring all developments to "conserve natural beauty." The Court found that the condition was "an unmeasurable quality, totally lacking in cognizable, quantitative standards." The Law Court in *Steward v. Town of Sedgwick*, 2000 ME 81, ¶ 12, stated that if an agency were to use the general purpose of conserving visual access, open space, and natural beauty as a separate standard it would likely be unconstitutionally vague.[1] However, the NRPA's "scenic and aesthetic use" standard is not unmeasurable, nor does it lack in cognizable quantitative standards.

38 M.R.S.A. 480-D provides:

> The Board of Environmental Protection shall grant a permit upon proper application and upon such terms as it deems necessary to fulfill the purposes of this article [the NRPA]. The board shall grant a permit when it finds that the applicant has demonstrated that the proposed activity meets the following standards.

> 2. Existing uses. The activity will not unreasonably interfere with existing scenic, aesthetic, recreational or navigational uses.

The provision contains "unreasonable" and "existing" as qualifiers of "scenic and aesthetic uses". Due process does not require objective quantification, mathematical certainty, or absolute precision in legislative language. *Town of Baldwin* at ¶ 9. "Reasonable" is a well-defined concept under the common law. *Id.* at ¶ 13 (citing *Tri-State Rubbish, Inc. v. Town of New Gloucester*, 634 A.2d 1284, 1287 (Me. 1993)). If the Court can fairly ascertain the meaning of a

---

[1] The Court notes that these cases also dealt with unconstitutional delegations of power from municipalities to town boards, not delegations from the legislature to state agencies bound by statute and the procedural safeguards of the APA.

statute by referencing common law and judicial determinations the ordinance is not void for vagueness. *Id.* (citing *State v. Davenport*, 326 A.2d 1, 6 (Me. 1974)). "Unreasonable" and "existing" are familiar words and the NRPA sufficiently conveys what conduct the legislature intended to forbid. *Id.* at ¶ 15. "There are limitations in the English language with respect to being both specific and manageably brief," and the NRPA contains terms that the "ordinary person exercising ordinary common sense can sufficiently understand and comply with." *Maine Real Estate Commission v. Kelby*, 360 A.2d 528, 531, (Me. 1976) (finding standards such as "bad faith" and "dishonest" not unduly vague) (quoting in an analogous context *United States Civil Service Commission v. National Association of Letter Carriers*, 413 U.S. 548, 578-79 (1973), 93 S.Ct. 2880, 2987.)

*Uliano*, ELLSC-AP-2002-00007, at 5-9 (footnote in original).

This analysis is still valid, and particularly so because of the last point above. If one focuses on the scenic and aesthetic terms in the context of the last point, what is clear is that those terms can be understood by the 'ordinary person exercising ordinary common sense' in order to be complied with. This Court does not find that the statute challenged by Petitioner is unconstitutional for the reasons stated.

> *7. That the Board's decision denies Petitioner they common law right to wharf-out to the navigable portion of the water.*

Clearly a riparian owner's rights to get out to the water are limited and subject to reasonable regulation. *Great Cove Boat Club v. Bureau of Pub. Lands*, 672 A.2d 91, 95 (Me. 1996). The common law right to get to the water is dependent on that reasonable regulation and does not void or make inoperative the impact of the Natural Resources Protection Act. The Court finds that the Board's decision in this matter appropriately intrudes on the Petitioner's right to wharf-out.

For all of the reasons stated above, this Court affirms the Board's decision on remand and denies Petitioner's appeal.

Dated: October 24, 2008

Kevin M. Cuddy
Justice, Superior Court

**RECEIVED & FILED**

OCT 28 2008

**HANCOCK COUNTY
COURTS**

11