2002 ME 129

**Roy and Patricia HOPKINS**

v.

**DEPARTMENT OF HUMAN SERVICES.**

Supreme Judicial Court of Maine.

Argued: June 13, 2002.
Decided: Aug. 8, 2002.

---

Valerie Stanfill, Elizabeth L. Bancroft, (orally), Cumberland Legal Aid Clinic, University of Maine School of Law, Portland, for the appellants.

G. Steven Rowe, AG, Dale Denno, AAG (orally), Augusta, for the appellee.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

RUDMAN, J.

[¶ 1] Roy and Patricia Hopkins appeal from the judgment entered in the Superior Court (Cumberland County, *Crowley, J.*) affirming the decision of the Department of Human Services (DHS) to terminate their Medicaid benefits. The Hopkins contend (1) that DHS failed to provide them with adequate notice of the reasons behind the termination as required by federal regulations and DHS rules of procedure, and (2) that this failure deprived them of their constitutionally protected due process rights. We disagree and affirm the judgment.

### I. STATEMENT OF THE CASE

[¶ 2] Roy and Patricia Hopkins suffer from serious health problems and must undergo extensive medical treatment, the combined cost of which is estimated to be $2527.48 per month. The Hopkinses are unable to work and must rely on Social Security as their only source of income. This income amounts to a combined $2368.50 per month.[1] Over the past few

---

1. Roy Hopkins receives Social Security in the amount of $848.50 per month, Patricia receives $672.00 per month, and each of their two children receive $424.00 per month.

years, the Hopkinses have received full Medicaid coverage.

[¶ 3] In a letter dated September 12, 2000, DHS informed the Hopkinses that their Medicaid benefits would terminate on March 31, 2001 and that their medical expenses between October 2000 and March 2001 would have to exceed $6477 (the deductible) before they received any further Medicaid assistance. The letter stated that the reason for the termination was because the Hopkinses' countable monthly income was greater than the allowable limit. The letter also cited various sections of the MAINE MEDICAID ELIGIBILITY MANUAL (MMEM), and included information about Medicaid availability for their children (Cub Care), their right to a hearing, and possible legal assistance. ME. MEDICAID ELIGIBILITY MANUAL, 10 144 CMR 332 (Weil 2001).

[¶ 4] Because the Hopkinses requested a fair hearing, DHS provided them with a "Fair Hearing Report." The report once again informed them that their Medicaid benefits were being terminated because their income exceeded the allowable limit. Although the report cited some general sections of the MMEM which pertained to income, it failed to provide an explanation as to how their income was calculated.

[¶ 5] The hearing was held on November 16, 2000. During the hearing, DHS clearly explained how it calculated the Hopkinses' income and the deductible. The hearing officer upheld the DHS decision to terminate the Hopkinses' benefits. The officer's decision stated that the reason for the termination of benefits was because the Hopkinses' monthly income exceeded the maximum allowable limit. The decision also provided a more specific explanation of how their income and deductible were calculated. The Hopkinses, pursuant to

M.R. Civ. P. 80C, appealed the decision to the Superior Court.

[¶ 6] The court, in a well-reasoned opinion, affirmed the decision of the hearing officer. The court determined that the Fair Hearing Report was defective in that it failed to provide information about how their income was calculated and that it cited general, rather than specific, sections of the MMEM. Nevertheless, the court found that the Hopkinses were not prejudiced by these omissions and noted that "there has been no assertion that additional preparation could have changed the outcome of the hearing—the [Hopkinses] receive too much unearned income, and therefore must be put on the deductible plan." The Hopkinses filed this appeal.[2]

## II. DISCUSSION

### A. The Notice

[¶ 7] Medicaid is a federal/state cooperative program designed to provide for the medical expenses of low income households. Before a state receives federal funding under this program, it must create a state plan which describes "the nature and scope" of its specific Medicaid program. 42 C.F.R. § 430.10. The plan must also "be administered in conformity with the specific requirements of title XIX, the regulations in [42 C.F.R.] Chapter IV, and other applicable official issuances of the Department." *Id.* Maine's Medicaid program is administered by DHS.

[¶ 8] We will vacate or modify an agency's decision only if the decision was "[m]ade upon unlawful procedure; . . . [u]nsupported by substantial evidence on the whole record; or [a]rbitrary or capricious or characterized by abuse of discretion." 5 M.R.S.A. §§ 11007(4)(C)(3), (5),

---

2. We note that throughout this proceeding the Hopkinses continued to receive Medicaid benefits.

(6). An agency's factual findings are afforded much deference and will be upheld if they are supported by "competent and substantial evidence." *Maine Bankers Ass'n v. Bureau of Banking,* 684 A.2d 1304, 1306 (Me.1996).

[¶ 9] Pursuant to federal regulations, before a state Medicaid agency reduces or terminates an individual's benefits, the agency must inform the individual in writing "(1) Of his right to a hearing; (2) Of the method by which he may obtain a hearing; and (3) That he may represent himself or use legal counsel, a relative, a friend, or other spokesman." 42 C.F.R. § 431.206(b). This notice must be provided "[a]t the time of any action affecting his or her claim," *id.* § 431.206(c)(2), and must (a) state the action which the agency intends to take; (b) the reasons for this action; (c) the "specific regulations" that support the action; and (d) an explanation of the individual's right to a hearing, *id.* § 431.210(a).

[¶ 10] The MMEM states that "[t]he notice must cite the manual [sic] Section on which the decision to deny or reduce benefits is based. It is not sufficient to state ... 'you have excess income'. The assets or income should be cited." ME. MEDICAID ELIGIBILITY MANUAL APP. A. 10 144 CMR 332 (Weil 2001). Furthermore, if an individual requests a hearing, DHS must provide him or her with a Fair Hearing Report which explains how DHS arrived at its decision. *Id.* More specifically, "[i]f income is an issue, the Eligibility Specialist must elaborate on how net income was determined." *Id.*

[¶ 11] DHS did not technically provide proper notice to the Hopkinses under both the federal regulations and the MMEM. The federal regulations require DHS to

inform the Hopkinses of the specific citations which authorize its decision. *See* 42 C.F.R. § 431.210. DHS admits that it failed to do this. Instead, the DHS notification letter only broadly referenced MMEM sections, some of which were not even applicable.[3] The specific sections which the hearing officer relied upon were not provided in the DHS notification letter or the Fair Hearing Report. The MMEM requires DHS to include within the Fair Hearing Report an explanation of how it calculated the Hopkinses' income. Again, DHS failed to do this. Furthermore, the agency's explanation that it could not foresee all of the applicable sections rings hollow in light of the fact that it succinctly explained its procedure and calculations during the Hopkinses' hearing. Also, there are no acceptable excuses for these omissions under the federal regulations or the MMEM.

**B. Prejudicial Error**

■ [¶ 12] Courts may vacate an agency's action if it results in *"procedural unfairness."* *Maine v. Shalala,* 81 F.Supp.2d 91, 95 (D.Me.1999). Therefore, "[p]rocedurally, an agency's decision can be 'arbitrary and capricious' if it was not the product of the requisite processes." *United States v. Dist. Council of New York City and Vicinity of the United Bhd. of Carpenters and Joiners of Am.,* 880 F.Supp. 1051, 1066 (S.D.N.Y.1995).

■ [¶ 13] The Hopkinses assert that as a result of the defective notice, they were unable to prepare a proper defense and offer appropriate evidence at the hearing to rebut the arguments of DHS. In order for the Hopkinses to prevail, they must show that they were prejudiced by the

---

**3.** DHS cited sections 2000, 2400, 3000, 3200.10, 3400, 3500, 4200–4500, 5060, and 9000 of the MMEM. Within sections 4200–4500 there are numerous sections and subsec-

tions which are not applicable, such as section 4400 which concerns the cost of care for institutionalized individuals.

defective notice. *See Kabir v. Mo. Dep't of Soc. Servs.,* 782 S.W.2d 706, 709 (Mo.1989) ("[T]he failure of an agency to comply with its own rules may invalidate its actions only when prejudice results."); *Liberty Testing Lab., Inc. v. Perales,* 188 A.D.2d 762, 591 N.Y.S.2d 553, 555 (1992) ("[N]otice was sufficient to permit petitioner 'to adequately prepare and present a defense to the charges.'"); *Vaynshelbaum v. Dowling,* 237 A.D.2d 132, 654 N.Y.S.2d 749, 750 (N.Y.App.Div.1997) ("[T]he notice was reasonably specific ... and petitioner did not establish any prejudice."). The record clearly shows that the Hopkinses were aware of the reason for the termination, and although at oral argument they were offered the opportunity to identify the harm that they sustained as a result of the defective notice, they were unable to do so.

[¶ 14] DHS's decision is based upon a strict mathematical computation. DHS calculated the Hopkinses' gross monthly income by adding their monthly Social Security payments together to arrive at $1520.50. ME. MEDICAID ELIGIBILITY MANUAL, 10 144 CMR 332, §§ 3530.03, 3420 (Weil 2001). From this figure the state ($80) and federal ($20) disregards were deducted which left a countable monthly income of $1420.50. *Id.* §§ 3530.03, 3440.01, 3440.02. The Hopkinses were given a deductible because this figure exceeded the allowable Medicaid limits. *Id.* §§ 3530.03, 3530.05, Chart VI. The deductible was calculated by subtracting the Hopkinses' appropriate Protected Income Level (PIL) of $341 from their countable monthly income which equaled $1079.50. *Id.* §§ 6000, Chart V. This remaining figure was then multiplied by six (the amount of months in the deductible period) to arrive at their deductible of $6477. *Id.* § 6000.

[¶ 15] Although inadequate notice may result in prejudice by precluding a benefits recipient from asserting an effective defense, such concerns are not warranted in this particular case. The Hopkinses were aware that the reason for the termination was because their income was too great. The numbers clearly support the decision of DHS.

### C. Good Cause Exception

[¶ 16] Federal regulations require state Medicaid programs to comply with the specific requirements of 42 C.F.R. Ch. IV. 42 C.F.R. § 430.10. One of these requirements states: "As a condition of eligibility, the agency must require applicants and recipients to take all necessary steps to obtain any annuities, pensions, retirement, and disability benefits to which they are entitled, unless they can show good cause for not doing so." 42 C.F.R. § 435.608(a). The Maine rules do not include this provision. The MMEM states that "[i]ndividuals must take all appropriate steps to obtain benefits to which they are entitled. This includes applying for the benefit and providing the other benefit source with necessary information to determine eligibility for the benefit." ME. MEDICAID ELIGIBILITY MANUAL, 10 144 CMR 332 § 1270 (Weil 2001).

[¶ 17] Nevertheless, the Hopkinses argue that Maine should adopt the "good cause" exception. They further argue that DHS's failure to notify them of this exception precluded them from offering appropriate evidence at their hearing. Although such an exception is required under the federal regulations, the Hopkinses have not shown any injury resulting from Maine's failure to adopt the "good cause" exception. They have not been denied benefits for attempting to reduce their Social Security income, nor have they even sought such a reduction. The issue is not properly before the court. *See Ricci v.*

*Superintendent, Bureau of Banking,* 485 A.2d 645, 647 (Me.1984).

### D.   Due Process

⬛ [¶ 18] Both the Fourteenth Amendment of the United States Constitution and Article One of the Maine Constitution guarantee that no individual shall be deprived of "life, liberty, or property, without due process of law." In *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the Supreme Court elaborated on how much due process is appropriate. The Court stated that

> the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335, 96 S.Ct. 893. Thus, "[d]ue process is a flexible concept calling for 'such procedural protections as the particular situation demands.'" *Seider v. Bd. of Exam'rs of Psychologists,* 2000 ME 118, ¶ 19, 754 A.2d 986, 991 (quoting *Mathews,* 424 U.S. at 334, 96 S.Ct. 893).

⬛ [¶ 19] DHS does not dispute the fact that the Hopkinses have satisfied the first prong of the *Mathews* analysis because individuals have a protected interest in the continuation of their Medicaid benefits. DHS argues, however, that under the second prong of the analysis, the Hopkinses have failed to show that there was a high risk that the actions of DHS resulted in an erroneous deprivation of this interest. DHS explicitly contends that "[t]here

is nothing in *Mathews* that transforms harmless error into grounds for reversal."

[¶ 20] The decision to terminate the Hopkinses' benefits was based upon the application of a mathematical formula. Under the circumstances of this case, we conclude that their due process rights were not violated. There was no risk that DHS's actions contributed to an erroneous deprivation of their Medicaid benefits.

The entry is:

Judgment affirmed.