STATE OF MAINE                                    SUPERIOR COURT
HANCOCK, ss                                       CIVIL ACTION
                                                  DOCKET NO. AP-02-7

                                                  AMM-HAV- ɔ/ᵤ/ɔꭇ;

ANTHONY and ERIN ULIANO,            )
                                    )
          Petitioners               )
                                    )
v.                                  )
                                    )
MAINE BOARD OF ENVIRONMENTAL        )              DECISION AND ORDER
PROTECTION                          )
                                    )
          Respondent                )
                                    )                DONALD L. GARBRECHT
and                                 )                     LAW LIBRARY
                                    )
PHOEBE B. BOYER, et al.,            )                MAR 1 ᵗ 2003
                                    )
          Intervenors               )

     Pending before the Court is Anthony and Erin Uliano's (the "Petitioners") appeal

from the Maine Board of Environmental Protection's (the "Board") decision denying

their application for a permit pursuant to the National Resource Protection Act (the

"NRPA"). For the following reasons the Court affirms the Board's decision.

### Background

     The Petitioners own waterfront property in Salsbury Cove on Eastern Bay in Bar

Harbor, Hancock County, Maine. The property has approximately 300 feet of frontage

on Eastern Bay. On February 12, 2001, the Petitioners filed a NRPA permit application

with the Department of Environmental Protection (the "Department") seeking a permit to

build a 95-foot long by 6-foot wide private recreational dock with a 50-foot long

aluminum ramp and a 16-foot by 20-foot wooden float secured by two granite-mooring

blocks.

1

The Department held a public informational meeting to receive comment on the application. The Department examined the application, public comment, conducted site visits and viewed the property from across Eastern Bay in Lamoine. On August 6, 2001, the Department approved the application and found that the dock would not: (1) unreasonably interfere with existing scenic and aesthetic uses, or with existing recreational or navigational uses; (2) cause unreasonable erosion of soil sediment; (3) unreasonably inhibit the natural transfer of soil from the terrestrial to the marine or freshwater environment; (4) unreasonably harm significant wildlife habitat, aquatic habitat, or other aquatic life, or unreasonably harm freshwater wetland plant habitat, or threaten to endanger plant habitat, travel corridors, or freshwater, estuarine, or marine fisheries; (5) unreasonably interfere with the natural flow of any surface or subsurface waters; (6) violate any state water quality law including those governing the classifications of the State's waters; (7) unreasonably cause or increase the flooding of the alteration area or adjacent properties; (8) be on or adjacent to a sand dune; and (9) be on an outstanding river segment as noted in 38 M.R.S.A. §480-P. Opponents of the application appealed the Department's approval to the Board.

On January 3, 2002, the Board heard the appeal at which the opponents, the Petitioners, and the Department argued the merits of the case. The Board voted to conduct a site visit to assess whether the proposed project violated the NRPA's "existing scenic and aesthetic uses" standard. On January 21, 2002, four of the ten Board members visited the site with the Board's executive analyst and Department staff. They reconvened on February 21, 2002, to the conduct final deliberations. The four members who conducted the site visit provided factual testimony describing their observations and

2

discussed the scenic and aesthetic impacts of the project. The Board, pursuant to the NRPA and the Wetlands Protection Rules (the "Rules") found that the Petitioners failed to demonstrate that there was no practicable alternative to the proposed project and that the project would unreasonably interfere with scenic and aesthetic uses and voted six to two grant the opponent's appeal.

## Arguments

The Petitioners allege that the NRPA's "scenic and aesthetic use" standard is unconstitutionally vague. The Petitioners further argue that the Board's use of the Rule's "cumulative impact" and "practicable alternative" standards exceeds the Board's rule-making authority, that they applied the standards in an arbitrary manner and finally that the standards themselves are unconstitutionally vague.

The Board contends the NRPA contains sufficient standards to guide their decision-making and that reasonable people need not guess at the meaning of the "unreasonably interfere with existing scenic and aesthetic uses." Further, the Board contends that they correctly relied upon the standards contained in the Rules in order to interpret the NRPA's statutory requirements.

## Discussion

### Statutes

In the "Findings; purpose" section of the NRPA the legislature notes the importance the Maine's various environmental resources and wetlands and further finds: "...that the cumulative effect of frequent minor alterations and occasional major alterations of these resources poses a substantial threat to the environment and economy of the State and its quality of life." 38 M.R.S.A. § 480-A. To this end the NRPA

requires individuals to apply for permits before they engage in certain activities, including the construction of piers. 38 M.R.S.A. § 480-D states in relevant part:

> The Board of Environmental Protection shall grant a permit upon proper application and upon such terms as it deems necessary to fulfill the purposes of this article [the NRPA]. The board shall grant a permit when it finds that the applicant has demonstrated that the proposed activity meets the following standards.
>
> 1. Existing uses. The activity will not unreasonably interfere with existing scenic, aesthetic, recreational or navigational uses.

In creating the Department the legislature provided that:

> Subject to the Maine Administrative Procedure Act, the [Board] shall adopt, amend or repeal reasonable rules and emergency rules necessary for the interpretation, implementation and enforcement of any provision of law that the department is charged with administering.

To this end the Board enacted the Rules to "ensure that the standards set forth in Section 480-D of the [NRPA]... are met by applicants proposing regulated activity in, on, over, or adjacent to a wetland or water body." CMR 06-096-310(1). The relevant regulations are as follows:

- No activity shall be permitted if there is a practicable alternative to the project that would be less damaging to the environment. Each applicant must provide an analysis of alternatives (see Section 9(A)) in order to demonstrate that a practicable alternative does not exist. CMR 06-096-310(5)(A).

- Even if a project has no practicable alternative and the applicant has minimized the proposed alteration as much as possible, the application will be denied if the activity will have an unreasonable impact on the wetland. "Unreasonable impact" means that one or more of the standards of the Natural Resource Protection Act, 38 M.R.S.A. §480-D, will not be met. In making this determination, the department considers:
  (a) The area of wetland that will be affected by the alteration and the degree to which the wetland is altered, including wetland beyond the physical boundaries of the project;
  (b) The functions and values provided by the wetland;
  (c) Any proposed compensation and the level of uncertainty regarding it; and

(d) Cumulative effects of frequent minor alterations on the wetland....
When considering whether a single activity is reasonable in relation to the direct and cumulative impacts on the resource, the department considers factors such as the degree of harm or benefit to the resource; the frequency of similar impacts; the duration of the activity and the ability of the resource to recover; the proximity of the activity to protected or highly developed areas; traditional uses; the ability of the activity to perform as intended; public health or safety concerns addressed by the activity; and the type and degree of benefit from the activity (public, commercial or personal). CMR 06-096-310(5)(D).

The Rules are not additional standards. The Board uses the Rules to interpret the NRPA and ensure applicants meet the NRPA's standards.

**Standard of Review**

The Petitioners have filed an appeal, pursuant to 5 M.R.S.A. § 11001 and M.R. Civ. P. 80(C), of the Board's final agency action denying their application for a permit. The Board acted pursuant to CMR 06-096-02(21), Review of Department Decisions, which states in part: "The Board is not bound by the Commissioner's findings of fact or conclusions of law." The Board did not act in an appellate capacity, but rather conducted a de novo review of the record and therefore the Court will review the Board's decision directly.

Courts review an agency's decision for abuse of discretion, errors of law, or findings not supported by the evidence. Hopkins v. Department of Human Services, 2002 ME 129, ¶8, 802 A.2d 999. The Petitioners are challenging the Constitutionality of the NRPA's "scenic and esthetic use" standard and the Rules "cumulative impact" and "practicable alternative" standards. There is a strong presumption of Constitutionality and the Petitioners bear the burden of proving the legislation unconstitutional. Town of Baldwin v. Carter, 2002 ME 52, ¶9, 794 A.2d 62. The Court must avoid finding a statute unconstitutional if a reasonable constitutional interpretation is available. The Petitioners

5

are further challenging the standards contained in the Rules claiming they exceed the Board's rule-making authority. There is a presumption of regularity and courts assume an agency acted with full knowledge of the material facts in justification of their action. Driscoll v. Gheewalla, 441 A.2d 1023, 1029-30 (Me. 1982).

**Scenic and Aesthetic Uses**

The Petitioners argue that the NRPA's "scenic and aesthetic use" standard is unconstitutionally vague. The Petitioners first allege that the legislature's delegation of authority to the Department is not well defined, specific or clear and therefore constitutes an unlawful delegation of authority. The absence of clear standards and guidelines grants an agency impermissible discretion that allows an agency to engage in legislative type opinion making. Wakelin v. Town of Yarmouth, 523 A.2d 575, 577 (Me. 1987). In determining the constitutionality of a legislative delegation of authority, the court reviews the entire relevant legislative scheme to determine if the legislature provided the agency with sufficient standards to guide their decision-making. Ogunquit Sewer Dist. V. Town of Ogunquit, 1997 ME 33, ¶16, 691 A.2d 654. The legislature accomplishes this goal when they clearly reveal the purpose of the regulations, define what an agency can regulate and suggest degrees of regulation. Northeast Occupational Exchange Inc., v. State, 540 A.2d 1115, 1116 (Me. 1998).

The Court in Kosalka v. Town of Georgetown, 2000 ME 106, ¶17, 752 A.2d 183, found a condition requiring all developments to "conserve natural beauty" an "unmeasurable quality, totally lacking in cognizable, quantitative standards" that amounted to an unconstitutional delegation of authority. The Court in Wakelin struck

down an "existing use" ordinance because of the lack of specific standards that limited the town zoning board's discretion.

The cases the Petitioners rely on involved municipalities delegating authority to local town boards. Courts have specifically recognized the substantial difference in delegations like those present in Kolsaka and Wakelin and delegations from the legislature to state agencies bound by statute. Lewis v. State Department of Human Services, 433 A.2d 743, 749 (Me. 1981). The legislature reveals the NRPA's purpose in its "Findings; purpose" section, defines what conduct the Department and the Board may regulate in furtherance of the NRPA's stated purpose, suggests levels of regulation, authorizes the Board to enact rules in furtherance of the NRPA, limits the Board's authority in its authorizing statute, requires the Board to enact rules pursuant to the APA, and provides for judicial review of the Board's decisions. The legislative scheme contains sufficient safeguards to "protect against an abuse of discretion by [the Board] and compensates substantially for the want of precise guidelines [in the NRPA itself] and may be properly considered in resolving the constitutionality of the [legislative] delegation of power. Northeast Occupational Exchange, Inc. v. State of Maine, 540 A.2d 1115, 1117 (Me. 1988) (quoting, Lewis, 433 A.2d at 749). It is not in the legislature's interest to include precise standards in statutes that deal with technical and scientific matters, and the additional procedural safeguards present in legislative delegations of authority make up for the lack of precise standards. Hannum v. Maine Board of Environmental Protection, No. AP-01-3, 2002 Me. Super. LEXIS 205, *9, (November 12, 2002) (citing Lewis, 433 A.2d at 748).

Further, viewing the Statute on its face, the "scenic and aesthetic use" standard would not cause an ordinary citizen to guess at its meaning. Concepts of due process require laws provide notice of what conduct the state will sanction. Town of Baldwin 2002 ME at ¶10. The Court in Kolsaka struck down an ordinance requiring all developments to "conserve natural beauty." The Court found that the condition was "an unmeasurable quality, totally lacking in cognizable, quantitative standards." The Law Court in Steward v. Town of Sedgwick, 2000 ME 81, ¶12, stated that if an agency were to use the general purpose of conserving visual access, open space, and natural beauty as a separate standard it would likely be unconstitutionally vague.[1] However, the NRPA's "scenic and aesthetic use" standard is not unmeasurable, nor does it lack in cognizable quantitative standards.

38 M.R.S.A. 480-D provides:

The Board of Environmental Protection shall grant a permit upon proper application and upon such terms as it deems necessary to fulfill the purposes of this article [the NRPA]. The board shall grant a permit when it finds that the applicant has demonstrated that the proposed activity meets the following standards.

2.      Existing uses. The activity will not unreasonably interfere with existing scenic, aesthetic, recreational or navigational uses.

The provision contains "unreasonable" and "existing" as qualifiers of "scenic and aesthetic uses". Due process does not require objective quantification, mathematical certainty, or absolute precision in legislative language. Town of Baldwin at ¶9. "Reasonable" is a well-defined concept under the common law. Id at ¶13. (citing Tri-State Rubbish, Inc. v. Town of New Gloucester, 634 A.2d 1284, 1287 (Me. 1993)). If the

---

[1] The Court notes that these cases also dealt with unconstitutional delegations of power from municipalities to town boards, not delegations from the legislature to state agencies bound by statute and the procedural safeguards of the APA.

Court can fairly ascertain the meaning of a statute by referencing common law and judicial determinations the ordinance is not void for vagueness. Id (citing State v. Davenport, 326 A.2d 1, 6 (Me. 1974)). "Unreasonable" and "existing" are familiar words and the NRPA sufficiently conveys what conduct the legislature intended to forbid. Id at ¶15. "There are limitations in the English language with respect to being both specific and manageably brief," and the NRPA contains terms that the "ordinary person exercising ordinary common sense can sufficiently understand and comply with." Maine Real Estate Commission v. Kelby, 360 A.2d 528, 531, (Me. 1976) (finding standards such as "bad faith" and "dishonest" not unduly vague)(quoting in an analogous context United States Civil Service Commission v. National Association of Letter Carriers, 413 U.S. 548, 578-79 (1973), 93 S.Ct. 2880, 2987.)

**Cumulative Impact**

The Petitioners contend the "Cumulative Impact" standard contained in the Rules exceeds the Board's rule-making authority. The Courts presume the regularity of a rule. Driscoll, 441 A.2d at 1029-30. However, this presumption cannot legitimize a rule adopted without authority. Conservation Law Foundation, Inc. v. State of Maine, No. AP-98-45 & AP-98-95, 2000 Me. Super. LEXIS 177, *17, (August 3, 2000) (citing Bangor Baptist Church v. Maine Department of Education, 549 F. Supp. 1208, 1229 (D. Me. 1982).

The legislature authorized the Board to enact the Rules in order to, "interpret, implement and enforce" the NRPA. 38 M.R.S.A. §341-D (1-B). The Board states that the purpose of the rules is "to ensure that the standards set forth in Section 480-D of the [NRPA] ... are met by applicants..." CMR 06-096-310(1). The Board did not create

additional standards that applicants must meet in order to get a permit. The standards contained in the rules simply assist the Board in interpreting and implementing the NRPA's statutory standards.[2]

The Petitioners further contend the "cumulative impact" standard is unconstitutionally vague because it simply parrots the "Purpose; finding" section of the NRPA and contains no quantifiable standards. The "Purpose; findings" section of the NRPA states in part, "the cumulative effect of frequent minor alterations and occasional major alterations of these resources poses a substantial threat to the environment and economy of the State and its quality of life." 38 M.R.S.A. §480-A. The general-purpose section of a statute provides a framework for a statute's specific requirements and is useful for the officials who must interpret the ordinance. Stewart v. Town of Sedgwick, 2002 ME 81, ¶12, 797 A.2d 27. However, an applicant does not need to demonstrate that their projects adhere to each of the NRPA's general purposes. Id. As discussed above, however, the Rules do not amount to separate additional standards. The "cumulative impact" standard, and the NRPA's "Purpose; findings" section, simply assists the Board in interpreting 480-D's requirements. The Rules provide that:

> Even if a project has no practicable alternative and the applicant has minimized the proposed alteration as much as possible, the application will be denied if the activity will have an unreasonable impact on the wetland. "Unreasonable impact" means that one or more of the standards of the Natural Resource Protection Act, 38 M.R.S.A. §480-D, will not be met. In making this determination, the department considers:
>> (a) The area of wetland that will be affected by the alteration and the degree to which the wetland is altered, including wetland beyond the physical boundaries of the project;
>> (b) The functions and values provided by the wetland;

---

[2] Further, 480-D states, "The department shall grant a permit upon proper application and *upon such terms as it considers necessary to fulfill the purposes of this article.*" (Emphasis added) Based on the Courts reasoning, the Court need not address whether the emphasized clause in the statute entitles the Board to create additional standards.

(c) Any proposed compensation and the level of uncertainty regarding it; and

(d) Cumulative effects of frequent minor alterations on the wetland....

When considering whether a single activity is reasonable in relation to the direct and cumulative impacts on the resource, the department considers factors such as the degree of harm or benefit to the resource; the frequency of similar impacts; the duration of the activity and the ability of the resource to recover; the proximity of the activity to protected or highly developed areas; traditional uses; the ability of the activity to perform as intended; public health or safety concerns addressed by the activity; and the type and degree of benefit from the activity (public, commercial or personal). CMR 06-096-310(5)(D).

The Rules contain sufficient standards to guide the Board's decision making. The purpose of the Rules is clear, the Rules instruct the Board to consider various factors when determining whether a project has an unreasonable impact on the wetland, reasonableness is a well-defined term, and the Board promulgated the Rules via the APA. The "cumulative impact" standard is not unconstitutionally vague.

The Petitioners also contend the Board applied the "Cumulative impact" standard in an arbitrary and capricious manner. An agency's action is arbitrary and capricious if it is a "willful and unreasoning action, without consideration of facts or circumstances." Help-U-Sell, Inc., v. Maine Real Estate Commission, 611 A.2d 981, 984 (Me. 1992)(quoting Central Maine Power Co. v. Waterville Urban Ren'l Auth., 281 A.2d 233 (Me. 1971). The record shows that the Board conducted two hearings and a site-visit, reviewed the record before the DEP and the parties submissions before rendering a decision. The Board applied the criteria in the NRPA and the Rules in order to reach their decision.

Courts afford an agency's factual findings great deference and will uphold those findings if they are supported by "competent and substantial evidence." Hopkins v. Department of Human Services, 2002 ME 129, ¶8, 802 A.2d 999. Those seeking to

overturn an agency decision must show not only evidence to support their position but the lack of substantial credible evidence in the record to support the agency's decision. Green v. Commissioner of Department of Mental Health, Mental Retardation and Substance Abuse Services, 2001 ME 86, ¶12, 776 A.2d 612. Inconsistent evidence will not render an agency decision unsupported by substantial evidence. Seider v. Board of Examiners of Psychologists, 2000 ME 206, ¶9, 762 A.2d 551. In light of the Petitioner's burden, they have failed to demonstrate that the Board's decision was arbitrary and capricious.

**Practical Alternatives**

The Rules provide:

No activity shall be permitted if there is a practicable alternative to the project that would be less damaging to the environment. Each applicant must provide an analysis of alternatives (see Section 9(A)) in order to demonstrate that a practicable alternative does not exist. CMR 06-096-310(5)(A).

Section 9(A) states:

Alternatives Analysis. A report that analyzes whether a less environmentally damaging practicable alternative to the proposed alteration, which the meets the project purpose, exists. Determining whether a practicable alternative exists includes:
(1) Utilizing, managing or expanding one or more other sites that would avoid the wetland impact;
(2) Reducing the size, scope, configuration or density of the project as proposed, thereby avoiding or reducing the wetland impact;
(3) Developing alternative project designs, such as cluster development, that avoid or lessen the wetland impact; and
(4) Demonstrating the need, whether public or private, for the proposed alteration.

The Petitioners argue that the "practical alternative" standard exceeds the Board's rulemaking authority, is unconstitutionally vague, and was applied in an arbitrary and capricious manner. For the reasons previously discussed the Court finds these arguments are without merit.

12

THE DOCKET ENTRY IS:

The Board of Environmental Protection's decision to deny the Petitioners' permit application is affirmed.

The clerk is ordered to incorporate this decision into the docket by reference.

DATED: Feb. 18, 2003

_____
Justice, Superior Court

FILED &
ENTERED

FEB 2 0 2003

SUPERIOR COURT
HANCOCK COUNTY

13