STATE OF MAINE

KENNEBEC, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-07-71
JMS - KEN - 5/9/2008

ROBERT BAILEY,

Petitioner

v.

MAINE DEPARTMENT OF HEALTH
& HUMAN SERVICES,

Respondent

**DECISION AND ORDER**

DONALD L. GARBRECHT
LAW LIBRARY

2008

In front of the court is petitioner's M.R. Civ. P. 80C petition for judicial review of respondent's final agency action.

## Facts

The facts are taken from the respondent's final decision of October 5, 2007 after a hearing on August 27, 2007, record exhibits or the transcript of the hearing. (R. at B-3(A); B-3(B).) Petitioner is a resident of Fryeburg Health and Residential Care Center (FHRCC), a licensed Private Non-Medical Institution (PNMI) under DHHS regulations. He's a 45-year-old former Maine State Trooper. In October of 2006, he was admitted to the Maine Medical Center on an emergency basis because he thought he was having a stroke. He was later diagnosed with Pato Myelosis, a condition that affects the use of one's legs. In October of 2006, petitioner became a resident of FHRCC and was given a private room. In November of 2006, petitioner filed a series of grievances regarding *inter alia* his clothes being given to someone else and being told that he would be involuntarily catheterized if he refused to provide the facility a urine sample.

Petitioner filed a formal grievance with the Maine Long-Term Ombudsman, by letter on November 29, 2006, the Ombudsman informed the FHRCC administrator that the investigation had closed. Within a week of that letter, petitioner was moved from his room to a room with an elderly roommate on the assisted living side of the facility.

On January 16, 2007, petitioner filed a written complaint regarding staff actions revolving around the staff's dispensation of medicine and their treatment of him when he complained about treatment. At the end of January 2007 and beginning of February 2007, petitioner's roommate was hospitalized and diagnosed with Methiciillin-Resistant Staphylococcus Aureaus (MRSA), a potentially life-threatening infectious disease spread in similar forms to the common cold. Staff members wore masks, gloves and gowns when entering the room as a precaution without offering similar protection to the petitioner. He demanded to be removed but was told there was nothing to worry about.

On July 13, 2007, petitioner was notified that he was being discharged from FHRCC because of, as stated in the notice:

> ...failure to pay for services in accordance with the contract you signed and repeated incidents of intimidating and inappropriate behavior in the presence of other residents, visiting families, and staff. You and I have discussed these issues...

The letter went on to detail these issues:

> The past due amount of $2,873.00 has been on ongoing issue since your admission and you have not communicated any attempt to rectify that situation. Your monthly Social Security checks are now being delivered to you here. The first month you paid your monthly cost of care from that check but refused to pay that for the month of June when I requested it this week.

> The intimidating and inappropriate behavior has reached the level that families and residents have complained and staff is unable to effectively perform their duties because of your frequent disruptions. When you and [sic] discussed the inappropriate language and behaviors this week you denied it [sic] and stated "I don't know where that's coming from". [sic] Other residents and staff are

threatened by your remarks. Your actions are now frequently offending other residents and staff members.

My staff and I have discussed issues with you and attempt to work with you to make your residency here as comfortable and accommodating as possible. You continue at an increasing [sic] frequent pace to cause incidents which are both threatening and inappropriate...

The letter then noted that petitioner was being discharged under §§ 5.3.4 (non payment of monthly cost of care) and 5.3.2 (continued tenancy constitutes a direct threat to the health of others). After a hearing in which James Dutton, administrator of FHRCC, though not an attorney presented the case and acted as FHRCC's primary witness, respondent concluded that the facts were appropriate as outlined in the discharge notice and that FHRCC had taken appropriate action.

**Standard of Review:**

Pursuant to M.R. Civ.P. 80C, this Court reviews an agency's decision directly for abuse of discretion, errors of law, or findings not supported by the evidence. *Centamore v. Dep't of Human Services*, 664 A.2d 369, 370 (Me. 1995). "An administrative decision will be sustained if, on the basis of the entire record before it, the agency could have fairly and reasonably found the facts as it did." *Seider v. Board of Exam'r of Psychologists*, 2000 ME 206 ¶9, 762 A.2d 551, 555 (Me. 2000) (citing *CWCO, Inc. v. Superintendent of Ins.*, 1997 ME 226, ¶6, 703 A.2d 1258, 1261 (Me. 1997)). In reviewing the decisions of an administrative agency, the Court should "not attempt to second-guess the agency on matters falling within its realm of expertise" and the Court's review is limited to "determining whether the agency's conclusions are unreasonable, unjust or unlawful in light of the record." *Imagineering v. Superintendent of Ins.*, 593 A.2d 1050, 1053 (Me. 1991). The focus on appeal is not whether the Court would have reached the same conclusion as the agency, but whether the record contains competent and substantial

evidence that supports the result reached by the agency. *CWCO, Inc.*, 1997 ME 226, 703 A.2d 1258, 1261. "Inconsistent evidence will not render an agency decision unsupported." *Seider*, 762 A.2d 551 (citations omitted). The burden of proof rests with the party seeking to overturn the agency's decision, and that party must prove that no competent evidence supports the Board's decision. *Id.* "[Petitioner] must prove that no competent evidence supports the Board's decision and that the record compels a contrary conclusion." *Bischoff v. Board of Trustees*, 661 A.2d 167, 170 (Me. 1995). Factual determinations must be sustained unless shown to be clearly erroneous. *Imagineering*, 593 A.2d at 1053 (noting that the Court recognizes no distinction between the clearly erroneous and substantial evidence in the record standards of review for factual determinations made by administrative agencies).

**Discussion:**

Petitioner improperly poses the question to the court whether the decision of the respondent that FHRCC has proven by a preponderance of the evidence that petitioner breached his contract in the amount of $2,7830. The question for this court is more circumscribed, it is whether respondent's determination is supported by *any* competent evidence in the record. *Bischoff*, 661 A.2d at 170. Competent evidence exists in the record that petitioner signed an agreement to pay for services and was not fulfilling the terms of that agreement. *See* (R. at F-2 p. 13, 18-19; B p. 17, 18, 94, 103, 104; F-1; HO-4 p. 1; F-3;

Petitioner also makes an awkward argument founded in contract law. He argues that a contract requires assent to the contract's terms and those terms must be fixed exactly in order to create legal liabilities. *See Searles v. Treasurers of St. Joseph's College*, 1997 ME 128, ¶ 13, 695 A.2d 1206, 1211. He reasons that because there was no fixed

monthly cost for care, there is no definitive proof that he was not in compliance with the cost of care. Respondent explains that initially in his contract petitioner agreed to pay the full cost of care as a private pay resident, however in April 2007, MaineCare determined the cost of care for petitioner to be $602 per month applied retroactively to petitioner's account. (R. at B; F-1.)

Carrying petitioner's argument to its logical end, the absence of fixed terms would preclude the existence of a contract. Lack of a valid contract would relieve petitioner of the requirement to pay for services, on the other hand it would also relieve respondent from continuing to provide that care. Ironically, this is the result achieved by respondent's decision, petitioner's discharge from the facility. *See Id; see also* Level IV PNMI Regulation § 5.3 ("Each resident has the right to continued residence whenever a *valid* contract for services is in force.")

Petitioner raises a number of arguments regarding procedural maladies with the process utilized by the respondent.[1] "The agency's interpretation of its own internal rules, regulations, and procedures is given considerable deference and will not be set aside 'unless the regulation plainly compels a contrary result.'" *Town of Warren Ambulance Serv. v. Dep't of Pub. Safety*, 2007 ME 120, ¶ 11, 930 A.2d 1052, 1056 (quoting *Downeast Energy Corp. v. Fund Ins. Review Bd.*, 2000 ME 151, ¶ 13, 756 A.2d 948, 951). Further, the court does not comment on whether any of these maladies constitute error, because in order to prove a deprivation of due process, he must prove that such error risked erroneous deprivation of his interest in continued care in the facility. *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976). Because failure to pay constitutes an independent ground for the respondent's decision, a ground upon which the alleged errors had no

---

[1]Specifically, petitioner raises questions about the hearing officer's choice to disallow him the opportunity to raise a "retaliation" defense at the hearing and the hearing officer's choice to allow facility administrator James Dutton to serve as the facility's "defacto attorney."

impact, any error was essentially harmless and petitioner was not erroneously deprived of due process rights. *See Hopkins v. Dep't of Human Services*, 2002 ME 129, ¶¶ 19-20, 802 A.2d 999, 1004.

Though not explicitly alleged, petitioner seems to raise questions of bias. "An administrative process may be infirm if it creates an intolerable risk of bias or unfair advantage." *Zegel v. Board of Social Work Licensure*, 2004 ME 31, ¶ 16, 843 A.2d 18, 22. Requirements of 'fair play' in the administrative context are less than those required in the courts, and fairness is to be determined "from case to case in accordance with differing circumstances." *Maine Clean Fuels, Inc.*, 310 A.2d at 746 (quoting *Federal Communications Comm'n v. WJR, The Goodwill Sta.*, 337 U.S. 265 (1949). The procedure utilized by DHHS here, particularly allowing Dutton to serve the roles he did, raises eyebrows, however the court "need not determine whether the process here crossed the line because the error, if any, was harmless." *Zegel*, ¶ 17, 843 A.2d at 22.

The entry is

> The petition is DENIED and the decision of the Department of Health and Human Services is AFFIRMED.

May ___, 2008

Justice Joseph Jabar

Date Filed ___November 2, 2007___ Docket No. _AP-07-71_

County

Action __Administrative Agency (80C)__ **J. JABAR**

Robert Bailey
Fryeburg Health & Residential
    Care Center
PO Box 127 Fryeburg ME   04037
~~XXXXXXXXXXXX~~
~~State of Maine~~                                    vs.

Maine Department of Health & Human Services
11 State House Station
Augusta ME   04333

~~Offense~~
Mark C Joyce Esq
Disability Rights Center of Maine
PO Box 2007
Augusta ME   04338 -2007

Attorney
Renee Guignard AAG
6 State House Station
Augusta,Maine   04333

| Date of Entry | |
|---|---|
| 11/06/07 | Filed 11/02/2007:  Petition for Review of Final Agency Action filed by Attorney Joyce. |
| 11/19/07 | 11/15/07:Renne Guignard AAG enter of appearance on behalf of Department of Health & Human Services. filed by R Guignard |
| 12/5/07 | Certified Record, filed 12/4/07.  s/Guignard, AAG  (in vault) |
| 12/5/07 | Notice and Briefing Schedule mailed to attorneys of record. |
| 1/15/08 | Brief of Petitioner, filed. s/Joyce, Esq. |
| 2/15/08 | Respondent's Brief, filed. s/Guignard, AAG |
| 3/4/08 | Reply Brief of Petitioner, filed. s/Joyce, Esq. |
| | Notice of setting for _4/8/08_<br><br>sent to attorneys of record. |
| 4/8/08 | Hearing held with the Hon. Justice Joseph Jabar, presiding. Mark Joyce, Esq. for the Petitioner and Renee Guignard, AAG for the Respondent. Oral arguments made to the court. Court to take matter under advisement |
| 4/10/08 | Letter regarding record, filed. s/Mark Joyce, Esq. |
| 5/9/08 | DECISION AND ORDER, Jabar, J. The petition is DENIED and the decision of the Department of Health and Human Services is AFFIRMED. Copies to attys. of record. Copies to Repositories Notice of removal of exhibits mailed to atty. of record. |