STATE OF MAINE

HANCOCK, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-07-10

FRIENDS OF BLUE HILL BAY,

Petitioner

v.

DECISION AND ORDER

GEORGE LAPOINTE, COMMISSIONER,
MAINE DEPARTMENT OF
MARINE RESOURCES,

Respondent

This matter is before the court on petitioner's M.R. Civ. P. 80C petition for judicial review of decision of the Commissioner, Maine Department of Marine Resources, regarding an aquacultural lease.

In May of 2006, Maine Cultured Mussels, Inc. and Erick Spencer Swanson[1] d/b/a Mussel Bound Farms applied with Department of Maine Resources (DMR) for a ten-year aquaculture lease on 51.42 acres in the coastal waters of Maine in Blue Hill Bay in the town of Blue Hill to cultivate blue mussels using suspended culture techniques. The application was accepted as complete on June 7, 2006. Intervenor status was granted to the petitioners, Friends of Blue Hill Bay (FOBHB) on February 26, 2007 in Blue Hill.

Following the hearing, Diantha Robinson, the hearing officer, circulated a "Proposed Findings of Fact, Conclusions of Law, and Decision" dated May 1, 2007. Petitioner raised a number of objections in writing on May 11, 2007. Respondent granted the application pursuant to his "Findings of Fact, Conclusions of Law, and Decision" dated May 25, 2007.

---

[1] Susan Swanson is the sole shareholder of Maine Cultured Mussels, Inc., she is married to Erick Swanson, they are the parents of Erick Spencer Swanson.

Pursuant to M.R. Civ. P. 80C, this court reviews an agency's decision directly for abuse of discretion, errors of law, or findings not supported by the evidence. *Centamore v. Dep't of Human Services*, 664 A.2d 369, 370 (Me. 1995). "An administrative decision will be sustained if, on the basis of the entire record before it, the agency could have fairly and reasonably found the facts as it did." *Seider v. Board of Exam'r of Psychologists*, 2000 ME 206 ¶ 9, 762 A.2d 551, 555 (Me. 2000) (citing *CWCO, Inc. v. Superintendent of Ins.*, 1997 ME 226, ¶ 6, 703 A.2d 1258, 1261 (Me. 1997)). In reviewing the decisions of an administrative agency, the Court should "not attempt to second-guess the agency on matters falling within its realm of expertise" and the Court's review is limited to "determining whether the agency's conclusions are unreasonable, unjust or unlawful in light of the record." *Imagineering v. Superintendent of Ins.*, 593 A.2d 1050, 1053 (Me. 1991). The focus on appeal is not whether the Court would have reached the same conclusion as the agency, but whether the record contains competent and substantial evidence that supports the result reached by the agency. *CWCO, Inc.*, 1997 ME 226, 703 A.2d 1258, 1261. "Inconsistent evidence will not render an agency decision unsupported." *Seider*, 762 A.2d 551 (citations omitted).

The burden of proof rests with the party seeking to overturn the agency's decision, and that party must prove that no competent evidence supports the Board's decision. *Id.* "[Petitioner] must prove that no competent evidence supports the Board's decision and that the record compels a contrary conclusion." *Bischoff v. Board of Trustees*, 661 A.2d 167, 170 (Me. 1995). Factual determinations must be sustained unless shown to be clearly erroneous. *Imagineering*, 593 A.2d at 1053 (noting that the Court recognizes no distinction between the clearly erroneous and substantial evidence in the record standards of review for factual determinations made by administrative agencies).

"The agency's interpretation of its own internal rules, regulations, and procedures is given considerable deference and will not be set aside 'unless the rule or regulation plainly compels a contrary result.'" *Town of Warren Ambulance Service v. Department of Public Safety, Maine Emergency Medical Services*, 2007 ME 120, ¶ 11, 930 A.2d 1052, 1056.

Petitioner argues that respondent erred by: 1) finding that the applicant had submitted a "complete" application pursuant to 12 M.R.S.A. § 6072; 2) failed to hold a pre-application meeting and public scoping session in compliance with DMR regulation 2.07(1); and 3) finding that applicant met its burden of demonstrating that the project contemplated by the application would comply with the criteria set out in 12 M.R.S.A. § 6072(7-A) and DMR regulations concerning navigation, fishing and other uses.

Title 12 M.R.S.A. § 6072(5) provides that, "the commissioner shall review the application and set a hearing date if the commissioner is satisfied that the written application is complete, the application indicates that the lease could be granted and the applicant has the financial and technical capability to carry out the proposed activities." Petitioner argues that the application was not complete for a variety of reasons. It asserts that respondent failed to determine the status of the applicant listed in the application as "Maine Cultured Mussels, Inc. and Erick Spencer Swanson d/b/a Mussel Bound Farms."

Petitioner argues the record makes clear that Maine Cultured Mussels, Inc., Erick Spencer Swanson and Erick Swanson formed a partnership and are thus susceptible to the "Multiple Ownership" application requirements of DMR Regulation 2.12. The result, petitioner argues, is that there is no way to properly allocate lease acreage under

DMR Regulation 2.12(3).[2] Respondent correctly notes that the multiple ownership information is not information required by 2.10(3). The department replied that there can be joint leaseholders not forming partnerships and directed Swanson to list both documents..

DMR regulation 2.10(3)(I) requires an applicant to demonstrate financial capacity for the project.[3] Maine Cultured Mussels, Inc. provided a letter from Bar Harbor Bank & Trust dated June 1, 2007, "In our opinion, Maine Cultured Mussels, Inc. and owner Susan Swanson have the financial capacity to fund the $131,000 for a cultured mussel operation as outlined in their Long Island lease application under 8.b." Petitioner argues that this is insufficient because 1) it doesn't demonstrate an intent or willingness of the bank to commit a specified amount of funds; 2) doesn't indicate whether the applicant has a sufficient amount of funds as Susan Swanson is not herself the applicant; 3) the applicant did not furnish a recent annual report or supporting documents indicating sufficient funds to finance activities or furnish copies of banking statements or other evidence indicating the availability of unencumbered funds or proof that equipment and see stock were available to it; and 4) the application lists operating costs at $131,000 plus $20,000 not including costs like insurance premiums or salaries, because the letter only demonstrates funds at $131,000, there is a $20,000 shortfall.

---

[2] 2.12(3) provides that "[n]o lease may be granted that results in a person being a tenant of any kind in leases covering an aggregate of more than 1,000 acres." It requires proper apportionment to corporations and partnerships.

[3] Financial Capacity. The applicant shall provide information showing, to the satisfaction of the Department, that it has obtained all of the necessary financial resources to operate and maintain all aspects of the proposed aquaculture activities. Each applicant shall submit accurate and complete cost estimates of the planned aquaculture activities. The following submissions are examples of acceptable documentation indicating adequate financial capacity:

    (1)    a letter from a financial institution or funding agency showing intent or willingness to commit a specified amount of funds, or

    (2)    the most recent corporate annual report and supporting documents indicating sufficient funds to finance the aquaculture activities, or

    (3)    copies of the bank statements or other evidence indicating availability of the unencumbered funds or proof that equipment and seed stock are available to the applicant.

Respondent stresses that the financial capacity requirement of 2.10(3)(I) is only that the applicant shall provide information "to the satisfaction of the department" so that an applicant meets a preliminary demonstration of capacity within the discretion of the department.

This initial step of application completeness is a winnowing step enabling a public hearing when the respondent is satisfied that sufficient information has been gathered rather than necessarily precluding those from a public hearing when they have not complied fully with every technical aspect listed in the regulations. Respondent also points out that the application stated that the culture equipment and service vessel were already owned by the applicant and that once seed reached market size, operating costs would be funded from cash flow from weekly harvesting and sales. These factors and the bank's statement satisfied the Department that applicant had sufficiently demonstrated its financial capacity.

DMR regulation 2.10(3)(J) requires an applicant to demonstrate their technical expertise by submitting "a resume or other documentation as evidence of technical expertise and capability to accomplish the proposed project." The application detailed that "Mr. Swanson was president of the Penobscot Salmon Company in Franklin, Maine, a vertically integrated salmon farming operation from 1989 to 1991." Further, "[h]e sold his interest in that company in 1991 to found Trumpet Island Salmon Farm, Inc..." Further, "Swanson has developed the Maine Cultured Mussel operating plan and technical aspects of adapting submerged longline mussel culture to this area."

Petitioner argues that this information fails to demonstrate technical expertise or practical experience in managing a 51.42 acre long-line mussel farm. Respondent responds this information as well as Maine Cultured Mussels, Inc. operation of two other active mussel leases in Blue Hill Bay combined with the detailed explanation of

the proposed site development and planned operations sufficiently demonstrated technical expertise to its satisfaction.

DMR regulation 2.10(3)(K) requires "detailed specifications on all gear" and documentation that "the equipment is the best available technology for the proposed activity." Applicant did not provide documentation and admitted as such. However, applicant did provide descriptions of the equipment to be used and stated on the application that the equipment to be used had been "successfully tested at the Open Ocean Aquaculture Project at the University of New Hampshire in open ocean conditions, subject to 30 foot seas and severe weather conditions, conditions far more severe than the [proposed] site will experience." Respondent found this information sufficient to support a determination that the application requirements were fulfilled.

DMR regulation 2.10 requires that the applicant provide "documentation confirming that the applicant has read MDMR Aquaculture Regulations chapter 2.40 and that upon issuance of a lease by the MDMR the lessee will either open an escrow account or obtain a performance bond determined by the nature of the aquaculture activities..." Erick Swanson testified that he purchased a performance bond for $5,000 on file with DMR.

DMR regulation 2.07(1)[4] requires an applicant to attend a pre-application meeting. DMR regulation 2.07(2)[5] requires an applicant to hold a pre-application scoping session.

---

[4] Prior to filing an application for a standard lease with the Department, an applicant shall attend a pre-application meeting with DMR staff and the harbormaster(s) and/or a municipal officer(s) or other designee(s) of the municipality(ies) in which the proposed lease is located to discuss the proposed application. The pre-application meeting will be held in the municipality in which the proposed lease site is predominantly located. The purpose of the meeting will be for the applicant to introduce the proposal to the municipality and the Department and for the applicant and the Department to gain local knowledge from the municipal officials. In addition the pre-application meeting will specifically define the environmental baseline or characterization requirements and other informational needs, including approximate location of the lease site that the Department determines are necessary to adequately present the proposed lease for review.

Petitioner contends that the applicant failed to fulfill either of these regulatory obligations. First, the pre-application meeting, it argues, was insufficient because it grossly misrepresented the total acreage to be 13, while the actual acreage is 51.24. Second, an informational meeting was held but was not conducted in the form of a "scoping session." Petitioner argues that as a result of these improper meetings, it and the respondent were unable to acquire accurate information about the effect on lobstering in the 51.24-acre lease area.

Respondent argues that its rules do not address circumstances as this where the application differs from the pre-application meetings, and the department in fact expects that applications will often differ from the previously presented proposal. Further it contends that the public informational meeting though not styled as a "scoping session" satisfied the informational intent of the regulations.

Because, "[t]he agency's interpretation of its own internal rules, regulations, and procedures is given considerable deference and will not be set aside 'unless the rule or regulation plainly compels a contrary result…'" this case comes down to whether any maladies in the application or pre-application process had deleterious impacts on the Department's decision. *Town of Warren Ambulance Service* ¶ 11, 930 A.2d at 1056. Respondent notes that in order to prevail petitioner must demonstrate that it was prejudiced by the errors. *Hopkins v. Department of Human Services*, 2002 ME 129, ¶ 13, 802 A.2d 999, 1002.

---

[5] The applicant shall hold a pre-application scoping session in the municipality in which the proposed standard lease is predominantly located. The applicant is required to attend the pre-application scoping session. The purpose of a pre-application scoping session shall be to:

    A.    Familiarize the general public with the proposal;

    B.    Allow the public an opportunity to provide the applicant with additional local information prior to development of an application;

    C.    Allow the public an opportunity to ask questions of the applicant and the Department; and

    D.    Provide the department with information that can be used during the Department site review.

The ultimate question is thus whether any of the above alleged problems with the application process harmed the Department's evaluation of the application under 12 M.R.S.A. § 6072(7-A) as it seems clear that § 6072(5) leaves to the discretion of the department to determine the application complete when "the commissioner is satisfied that the written application is complete."

In order to prevail on its contention, the petitioner must prove that no competent evidence exists in the record to support the Department's finding that the lease will not unreasonably interfere with navigation, fishing and other uses of the area. "A party seeking review of an agency's findings must prove they are unsupported by *any* competent evidence." *Maine Bankers Ass'n v. Bureau of Banking*, 684 A.2d 1304, 1306 (Me. 1996) (emphasis added). "Inconsistent evidence will not render an agency decision unsupported." *Seider*, 762 A.2d 551 (citations omitted).

Petitioner points to the testimony of Professor Don Eley, president of FOBHB. Respondent on the other hand noted the site inspection of its Aquaculture Environmental Coordinator, Jon Lewis. It is not this court's prerogative to interfere with the field of the agency's expertise in these matters, and competent evidence exists to demonstrate that the lease will not unreasonably[6] interfere with navigation in compliance with 12 M.R.S.A. § 6072(7-A)(A).

Petitioner argues that because the pre-application and public informational meetings were based on a 13-acre site and not the 51.42-acre site, the public and Town did not have sufficient opportunity to provide proper feedback on issues of the lease's effect on fishing. Further, it points to the testimony of Daniel Pert and others who fish in the area and testified they'd be displaced by the lease site.

---

[6] Respondent notes that the statute does not require that there be *no* interference with navigation, only that interference is not unreasonable.

Respondent points to the testimony of Erick Swanson and trusted his statement that his site was based on where people don't fish.[7] Further it cites the site review which found that "no species of economic importance were documented by the underwater video conducted on July 24, 2006."

While the court defers to the expertise of the agency in aquaculture matters, it hastens to comment on the allegation by the petitioner that the failure to conduct a subsequent preapplication meeting and public scoping session after the joint application increasing the size of the lease area to 51.42 acres is a violation of the Department's regulation and implying due process issues The language of the finding and decision of the Commissioner, is worthy of note:

> The policy purpose of preapplication meetings and scoping sessions is not only to inform municipalities and the public about the nature of the project that the applicant is considering but also to elicit more information for the applicant from the public about the proposed site. It is to be expected that the application itself, which is submitted to DMR only after the preapplication meeting and the scoping session have occurred, may differ in some ways from the initial proposal. In this case the project changed from a 13-acre lease for Erick Spencer Swanson to a 51.42-acre lease for him in conjunction with MCM (Maine Cultured Mussels, Inc.).

> The structure of the lease application process places the preapplication meeting and the scoping session ahead of the actual application; once the application is received, the process moves on toward the public hearing. The statute and rules make no provision for altering the process when an application differs from the proposal previously presented to the public. To repeat the preapplication meeting and scoping session, as the intervenor proposes, would move the process background and call into question the status of the application. Here, DMR followed a practical and effective policy geared to carry out the intent of the statutory scheme.

Findings of Fact, Conclusions of Law and Decision of Commissioner, May 25, 2007.

---

[7] Swanson stated:
> In deep water out there...deeper than 100 feet it's mud bottom and there's really not much to fish for. We had a meeting back in the 90's with a bunch of fishermen that was down in Tremont...about 30 fishermen showed up and I asked the question 'Where do you suggest we go to do aquaculture activities?' and they all agreed that between Bartlett Island and Long Island in deep water it's mud bottom and nothing to fish for and they didn't...that was the place to go and that's where we've since focused our efforts.

The Commissioner goes on to explain the value in the public interest from the prehearing process to receive notice of the application that is complete enough and timely enough to enable it to present further information to the Department either by written comments, examination at hearing or formally intervening. He goes on to note that the public information hearing held in February of 2007 was added to alert the public to the change in the proposed leased site.

Further, the court finds no compelling evidence in the record that factually challenged the effect of the enlargement in acreage.

This court is satisfied that the Commissioner followed both the letter and intent of the regulations and law regarding public participation and, most particularly, participation by the intervenor in the approval process.

The entry will be:

> Decision of the Commissioner of the Department of Marine Resources in the matter of Maine Cultured Mussels, Inc. and Erick Spencer Swanson d/b/a Mussel Bound Farms, Docket No. 2006-17 dated May 25, 2007, is AFFIRMED.

Dated: July____14____, 2008

Donald H. Marden
Justice, Superior Court

RECEIVED & FILED

JUL 16 2008

HANCOCK COUNTY
COURTS